UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Patricia J. Smith,
                **Plaintiff,**
                              Civil Action 2:11-cv-00616
      v.                        JUDGE EDMUND A. SARGUS, JR.
                                Magistrate Judge Terence P. Kemp

United States of America, et al.,
                **Defendants.**

## OPINION AND ORDER

Plaintiff Patricia Smith brings this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2401(b), 2671-80, alleging that the United States Department of Veterans Affairs proximately caused her husband's injury and death when a radiologist produced an erroneous MRI report, prompting her husband to have an unnecessary surgery that caused him to pass away. (Compl. ¶ 18-21, 23-24, 30.) This matter is before the Court for consideration of Defendant United States of America's Partial Motion to Dismiss Plaintiff's Complaint. (ECF No. 53.) For the reasons below, the motion is **GRANTED**.

## I. BACKGROUND

In September 2009, Columbus Radiology Corporation ("CRC") and its radiologists produced reports on patient imaging studies (such as MRIs) from the Chillicothe VA Medical Center. (Decl. of David Massey, Ex. 1, ¶ 4; ECF No. 53-1.) In doing so, the CRC used a VA-provided system called VistARad that consisted of diagnostic software for viewing images. (*Id.* ¶¶ 4-6.)

At the beginning of the process, a patient is examined, his images are transmitted to offsite radiology services such as CRC, and an "unread list" of patient studies is generated. (*Id.* ¶¶ 9, 10.) When a radiologist chooses a patient study from the "unread list," VistARad pulls the

images for that study onto the VistARad monitors. (*Id.* ¶ 11.) Choosing the study also prompts the radiologist to send the case information to PowerScribe, a commercial voice recognition application that creates an electronic report as radiologists verbally interpret the images. (*Id.*) When PowerScribe receives the information, the patient's report is opened on a different monitor than the VistARad monitor. (*Id.*) The radiologist then dictates the patient's report by speaking into a microphone while viewing the radiology images on the VistARad monitors. (*Id.*)

If the radiologist simultaneously accesses multiple patient studies on VistARad, then the radiologist must compare patient identifying information for the VistARad study and the PowerScribe report. (*Id.* ¶ 12.) If not done, then the radiologist may mistakenly dictate one patient's study information into a different patient's report. (*Id.* ¶¶ 12-13.) According to the United States, this occurred when Dr. Brogan, looking at a different patient's MRI, mistakenly reported that Smith's husband, William, had a pituitary macroadenoma. (*Id.* ¶¶ 13, 18-19 & Attach. D.) This erroneous report allegedly led William to have surgery to remove his pituitary gland, which caused complications and his death. (Compl. ¶¶ 13-16; ECF No. 2.)

Patricia Smith sued, alleging, among other things, that the VA failed to have a medical record and radiology system in place to prevent the mistaken report. (Compl. ¶ 18(d).) The United States of America now moves to dismiss Smith's claim relating to the VA's medical record and radiology system for lack of subject matter jurisdiction.

## II. STANDARD

"Sovereign immunity shields the United States from suit absent a consent to be sued that is unequivocally expressed," *United States v. Bormes*, 133 S. Ct. 12, 16 (2012) (internal quotation marks omitted), and "the terms of [that] consent . . . define th[e] court's jurisdiction to entertain the suit," *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (internal quotation marks

omitted).  Though the FTCA waives sovereign immunity, it contains several exceptions, including the discretionary function exception.  *See* 28 U.S.C. § 2680(a).  If the challenged conduct falls within this exception, the Court lacks subject-matter jurisdiction over the claim and must dismiss it.  *See Kohl v. United States*, 699 F.3d 935, 940 (6th Cir. 2012).

The United States moves to dismiss Smith's claim relating to the VA's medical record and radiology system, arguing that it challenges the exercise of a "discretionary function" and thus FTCA's limited waiver of sovereign immunity does not apply.  Although the United States cites Federal Rule 12(h)(3) as the ground for its motion, in substance, the motion is properly characterized as seeking dismissal for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1).

A motion under Rule 12(b)(1) can involve either a facial attack or a factual attack.  A facial attack on subject matter jurisdiction goes to whether the plaintiff has properly alleged a basis for subject matter jurisdiction, and the trial court takes the allegations of the complaint as true. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Smith v. Encore Credit Corp.*, 623 F.Supp.2d 910, 914 (N.D. Ohio 2008). A factual attack is a challenge to the factual existence of subject matter jurisdiction.  No presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  Although not expressly stated, the United States mounts both a facial and factual attack.  Both are well-taken.

### III. DISCUSSION

The discretionary function exception shields the government from liability for any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary

3

function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

In determining whether Smith's claim falls within the discretionary function exception, the "crucial" first inquiry is to determine the conduct at issue. *Kohl*, 699 F.3d at 940 (6th Cir. 2012). The parties apparently agree that Smith challenges the VA's conduct in selecting and using its medical record and radiology system. (*See* Mot. to Dismiss at 1 (challenging claim against the government for "[f]ailing to have a medical record and radiology system in place that would prevent" the erroneous report) (quoting Compl. ¶¶ 11-12, 18(d)); *see also* Resp. Mot. Dismiss at 2 (alleging that the VA failed "to have a medical record and radiology system in place that would prevent this type of error from occurring").)

To determine whether this conduct falls within the discretionary function exception, the Court applies a two-part test. First, the Court must determine whether the challenged conduct "violated a mandatory regulation or policy that allowed no judgment or choice." *Kohl*, 699 F.3d at 940 (citations omitted). If "there was room for judgment or choice in the decision made," then the challenged conduct was discretionary and the Court proceeds to second step: "evaluat[ing] whether the conduct is of the kind that the discretionary function exception was designed to shield from liability." *Id.* (internal quotation marks omitted). Because the exception's purpose is "to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort," *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991) (internal quotation marks omitted), "if th[e] action involves choice or judgment that is 'susceptible to policy analysis,' then it falls within the discretionary-function exception," *Kohl*, 699 F.3d at 940 (quoting *Gaubert*, 499 U.S. at 325). "[W]hen established governmental policy, as expressed or implied by statute, regulation, or

4

agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Id.* (citations omitted). Thus, Smith must show "that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *See Gaubert*, 499 U.S. at 325.

The Court now turns to the two-step test to determine whether the VA's design and maintenance of its medical record and radiology system falls within the discretionary function exception.

## A. Discretionary Conduct

Regarding the first step, the VA's conduct involved an "element of judgment or choice" because no specific regulation or policy governed the design and use of the medical record and radiology system. *See Kohl*, 699 F3d at 942 ("Because there was no specific regulation or policy governing the [challenged conduct], [it] involved discretion."). Smith points to no mandatory directive showing that the VA had a duty to maintain its system in a specific manner. Rather, as the United States shows, the relevant statutes allow the VA to exercise discretion in that the agency, "to the extent feasible," designs and manages health care programs "to promote cost effective[ness] . . . in the most clinically appropriate setting," 38 U.S.C. § 1706, and may "improve the quality of health care provided veterans" by entering into agreements with health-care providers such as the CRC, 38 U.S.C. § 8151; *see also* 38 U.S.C. § 8153(a)(1). Accordingly, the VA's design of its system involved discretion. *See Gaubert*, 499 U.S. at 322 ("If . . . there was room for judgment or choice in the decision made, then the challenged conduct was discretionary.").

**B. Susceptibility to Policy Analysis**

Turning to the second step, the Court concludes that the challenged conduct is "of the kind that the discretionary function exception was designed to shield," *Gaubert*, 499 U.S. at 322-23, because the design of the VA's medical record and radiology system is susceptible to policy analysis, *see Rosebush v. United States*, 119 F.3d 438, 444 (6th Cir. 1997) ("The proper inquiry is whether the challenged actions are 'susceptible to policy analysis,' not whether they were the result of a policy analysis."). As shown above, the statutory framework expressly provides the VA discretion and thus "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *See Gaubert*, 499 U.S. at 324.

The United States offers undisputed evidence to bolster this presumption. According to an IT manager with the VA, diagnostic radiology viewing software "inherently involves prioritizing software design, changes, and maintenance based on balancing user needs and limited resources," and VA facilities choose which diagnostic viewing software to use based on radiologists' technical preferences in providing quality health care while taking into account the product's cost. (Carlson Decl. ¶ 7; ECF No. 53-2.) These decisions reflect the kind of judgment that the discretionary function exception was designed to shield. *See Cruz v. United States*, 684 F. Supp. 2d 217, 224 (D.P.R. 2010) (dismissing claim that VA negligently designed and maintained inadequate computer systems and safeguards, holding that maintaining computer system "implicate[s] policy judgments about how . . . to allocate resources among various objectives"); *see also Kohl*, 699 F.3d at 943 (holding that "[t]he planning and execution of the research experiment is susceptible to policy analysis, including judgments about . . . [the] level of safety precautions to take, and how best to execute the experiment").

The conduct at issue here implicates policy. *See Gaubert*, 499 U.S. at 324-25 ("For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime."). Still, the plaintiff maintains jurisdiction exists, arguing that the VA knew about its system's defects that led to Dr. Brogan's mistaken report and that it could have protected against this mistake by warning physicians and patients of these flaws. She points to a case recognizing that the "Third Circuit has held that the discretionary function exception does not apply where the Government is aware of a specific risk of harm, and eliminating the danger would not implicate policy but would involve only garden-variety remedial measures." *Angle v. United States*, No. 12-2495 JLL, 2013 WL 3087095, at \*9 (D.N.J. June 18, 2013) (citing *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 330 (3d Cir. 2012)).[1] Smith also analogizes her case to *Andrulonis v. United States*, which held that the discretionary function exception did not apply where a government scientist should have warned about a laboratory's obviously dangerous conditions and the warning would not implicate any policy considerations. 924 F.3d 652, 653, 655 (2d Cir. 1991). Assuming these cases apply, they provide Smith no support.

Smith fails to show that the VA knew of the specific risk of harm that occurred here. She highlights that five months before Dr. Brogan made the erroneous report, a VA officer "requested that the 'read list' in the VistA Rad system be cleaned up, so as not to confuse the [CRC] doctors," and that that the system "contain[ed] studies waiting to be read, plus those already read." (Resp. Mot. Dismiss at 4.) But the "read list" containing already read and unread

---

[1] Neither decision denied the discretionary function exception. *See Abunabba*, 676 F.3d at 335-42 (holding discretionary function exception bars claim that National Park Service negligently failed to warn of the danger posed by barracudas); *Angle*, 2013 WL 3087095, at \*1, 8 (ordering discovery on jurisdictional question where errant artillery shell crashed through the roof of the plaintiff's home).

studies five months before the erroneous report does not show that the VA had notice of the "specific risk" of Dr. Brogan interpreting one unread patient's imaging study into a different unread patient's report. Smith also points to an instance two months after the erroneous report where a different radiologist made and caught a mistake when producing reports on patients with similar names. (Resp. Mot. Dismiss at 4.) Again, this lone incident would not have alerted the VA to the "specific risk" that Dr. Brogan interpreted the wrong brain MRI into William Smith's report two months earlier, or that the report would then lead to surgery.

Moreover, Smith fails to explain how requiring the VA to warn about its system's flaws does not implicate policy, and Sixth Circuit precedent shows that whether and how to provide a warning is susceptible to policy analysis. *See Rosebush v. United States*, 119 F.3d 438, 443 (6th Cir. 1997) ("[T]he decision whether to warn of potential danger is a protected discretionary function."); *see also Reetz v. United States*, 224 F.3d 794, 797 (6th Cir. 2000); *Stanford v. United States*, 992 F. Supp. 2d 764, 779 (E.D. Ky. 2014) (citing cases and noting that "[d]ecisions about appropriate warnings . . . involve policy concerns including cost, feasibility, and effectiveness.").

Smith insists that "there really could be no policy that would support allowing a mistake of this magnitude." (Resp. Mot. Dismiss at 6.) But this misses the mark. The relevant question is whether the design of the VA's radiology and medical records system is susceptible to policy analysis, not whether any policy supports the mistake made. At bottom, Smith claims negligence by the VA, but "[n]egligence . . . is irrelevant to our inquiry." *Kohl*, 699 F.3d at 941 (citation omitted); *see also* 28 U.S.C. § 2680(a) (providing for immunity "whether or not the discretion involved be abused").

## IV. CONCLUSION

8

For the foregoing reasons, the United States' Partial Motion to Dismiss Plaintiff's Complaint is **GRANTED**.  Plaintiff's claim relating to the VA's medical record and radiology system is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

_9-16-2014_

**DATED**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**